Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KENNETH KAPROWSKI**<br><br>Plaintiff,<br><br>v.<br><br>**ESTI FOODS, LLC; and KONSTANTINOS IFANTIS,**<br><br>Defendants. | Civil Action No.: 21-14693 (ES) (MAH)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Kenneth Kaprowski is a former employee of Defendant Esti Foods, LLC ("Esti"), the president of which is Defendant Konstantinos Ifantis. Plaintiff sues Defendants and asserts federal and state law claims of discrimination and retaliation, and state law claims of breach of contract, wage theft, and unjust enrichment. (D.E. No. 14 ("Am. Compl.")). Defendants move to dismiss the complaint, arguing that the federal claims of discrimination and retaliation are insufficiently pleaded and that the Court should not exercise supplemental jurisdiction over the remaining state law claims. (D.E. No. 17; D.E. No. 17-2 ("Mov. Br.")). As set forth below, the motion is **DENIED in part** and **GRANTED in part**.

### I.  BACKGROUND

#### A.  Plaintiff's Employment

As alleged in the Amended Complaint, Plaintiff was hired by Esti in September 2017 as vice president of sales. (Am. Compl. ¶ 15). At the time, he was 66 years old. (*See id.* ¶¶ 15 & 41–42; Mov. Br. at 7). At his hiring, Esti promised Plaintiff a compensation package that would include a salary of $130,000 and healthcare coverage on Esti's company plan. (Am. Compl. ¶ 16).

On August 9, 2019, Esti fired Plaintiff. (*Id.* ¶ 41). At the time, Plaintiff was 68 years old. (*Id.* ¶ 42).

During his employment, Plaintiff's supervisor rated his job performance as "exemplary and outstanding." (*Id.* ¶ 83). According to Plaintiff, he helped increase Esti's U.S. sales and cultivated new business, created new sales routes, hired and trained new salespeople, established and managed Esti's product demonstration team, and directed Esti's promotional efforts. (*Id.* ¶ 21). Plaintiff also increased business accounts in his area from two to approximately 200. (*Id.* ¶¶ 24 & 87). Plaintiff set up deals with ShopRite warehouses that went into full effect after his termination and led to increased sales for Esti in the following months. (*Id.* ¶¶ 28 & 30). Plaintiff claims that he "diligently performed all tasks with professionalism and an outstanding work ethic" and was not issued any written or verbal warnings regarding his job performance. (*Id.* ¶¶ 43–44).

Plaintiff alleges that, despite his exemplary job performance, Esti and its employees made demeaning comments about his age and otherwise treated him differently due to his age. (*Id.* ¶¶ 32–39). Specifically, Plaintiff alleges that Ifantis told Plaintiff and other employees that Plaintiff "was an old man and was too old." (*Id.* ¶ 34). Throughout Plaintiff's employment, Ifantis allegedly denied Plaintiff health coverage under Esti's plan because, according to Ifantis, Plaintiff would cause a significant increase in the cost of Esti's health insurance plan due to his age. (*Id.* ¶¶ 33, 57–59, 61 & 63–65). Ifantis noted in November 2018 that Plaintiff "was the oldest person" at Esti and "was older than [his] father," and in June 2019 that Plaintiff "was in good shape for an old guy." (*Id.* ¶¶ 35–36). Moreover, Ifantis and another Esti employee allegedly approached Plaintiff in June 2019, about two months before his termination, and asked whether he intended to retire in the near future. (*Id.* ¶ 37). In late July or early August 2019, Esti's Chief Sales Officer, Chip Rosenberg, told Plaintiff to "come sit up front [to] . . . see and hear better due to his age."

2

(*Id.* ¶ 39). Similarly, in August 2019, Rosenberg instructed Plaintiff not to answer any questions "because [Plaintiff] was the oldest person in the group." (*Id.* ¶ 38). Plaintiff says that he repeatedly complained directly to Ifantis about these demeaning comments, but neither Ifantis nor Esti took corrective action. (*Id.* ¶ 40). Plaintiff further alleges that Esti offered health coverage on its company plan to younger employees and that younger employees were not terminated for failing to meet monthly sales goals. (*Id.* ¶¶ 65 & 91).

  B.  **EEOC Proceedings**

On March 28, 2020, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 51). In response to the EEOC charge, Esti denied Plaintiff's allegations and offered alternative explanations for Plaintiff's termination. (*Id.* ¶¶ 52–55, 66–67, 69, 73, 79, 84, 89–90, 92 & 94).

Plaintiff claims that Esti's denials and alternative explanations were "false, erroneous, and inconsistent." (*Id.* ¶ 53). For example, Esti falsely asserted, according to Plaintiff, that he was fired "**entirely** due to his alleged poor performance in sales and that [he] was allegedly 'one of the worst performing employees in the entire company.'" (*Id.* ¶ 79 (emphasis in original)). Plaintiff claims, however, that his direct supervisor considered his job performance "exemplary and outstanding," believed he was "a diligent, hard-working employee[] who achieved many good results" for Esti, and was unaware of any verbal or written warnings related to Plaintiff's job performance. (*Id.* ¶¶ 82–83). Esti also falsely claimed, Plaintiff alleges, that he did not increase its business or meet monthly sales goals, that he allowed shelves to remain bare of Esti products, and that he mismanaged the product demonstration program. (*Id.* ¶¶ 84, 90, 92 & 94). Meanwhile, Plaintiff claims, as allegedly confirmed by his supervisor, that he opened all but two of the approximately 200 sales accounts that he managed at the time of his termination, that younger Esti

3

employees were not criticized for failure to meet monthly sales goals, that Esti products were occasionally absent from shelves due to inventory shortages, and that he did a "very good job" managing the product demonstration program. (*Id.* ¶¶ 86–87, 90, 92 & 94). Plaintiff further alleges that Esti falsely denied that Ifantis and Rosenberg made the above-discussed disparaging remarks. (*Id.* ¶¶ 66–68 & 73–78). Finally, Defendants falsely claimed that Plaintiff was offered, but declined, health insurance. (*Id.* ¶¶ 55, 59 & 63).

On June 1, 2021, the EEOC issued Plaintiff a notice of right to sue. (*Id.* ¶ 100).

C.  **Procedural History**

Plaintiff filed the instant action on August 6, 2021, and the Amended Complaint on November 2, 2021. (D.E. No. 1; D.E. No. 14). In counts one and two of the Amended Complaint, Plaintiff brings federal claims of age discrimination and retaliation against Esti under the Age Discrimination in Employment Act of 1967 ("ADEA"). (Am. Compl. ¶¶ 102–10). In counts three through six, Plaintiff brings analogous state law claims against Esti and Ifantis under the New Jersey Law Against Discrimination (the "NJLAD"). (*Id.* ¶¶ 111–30). In counts seven and nine, Plaintiff brings common law claims for breach of contract and unjust enrichment against Esti. (*Id.* ¶¶ 131–35 & 143–50). And in count eight, Plaintiff brings a claim for failure to pay wages against Esti and Ifantis under the New Jersey Wage Payment Law (the "NJWPL"). (*Id.* ¶¶ 136–42).

Defendants move to dismiss the Amended Complaint (D.E. No. 17), arguing that the federal claims of discrimination and retaliation are insufficiently pleaded and that the Court should not exercise supplemental jurisdiction over the remaining state law claims. (Mov. Br. at 1).

II.  **LEGAL STANDARD**

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts "all well-pleaded allegations as

true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III.  DISCUSSION

#### A.  Age Discrimination

In pertinent part, the ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or such privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). A *prima facie* case of age discrimination has four elements: "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the adverse action occurred under circumstances that create an inference that plaintiff's age was a motivating factor." *Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 (3d Cir. 2019). However, on a motion to dismiss, the plaintiff need not formally plead a *prima facie* case. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) ("A *prima facie* case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a

claim." (internal quotation marks omitted)). Instead, the plaintiff need only "allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Following this standard, the Court holds that Plaintiff has successfully stated a claim of age discrimination under the ADEA. *First*, Plaintiff was 68 years old at the time of his firing and is covered under the ADEA. *Second*, Plaintiff suffered an adverse employment action when he was fired from his job on August 9, 2019. *See Muhammad v. Sills Cummis & Gross P.C.*, 621 F. App'x. 96, 100 (3d Cir. 2015).

*Third*, Plaintiff alleges, and the Court accepts as true, that he was qualified for his former position at Esti. And not only does Plaintiff allege he was qualified. He claims to have been a stellar employee. For example, Plaintiff increased business accounts in his area from two to approximately 200, including deals with ShopRite warehouses that went into full effect after his termination and led to increased sales in subsequent months. (Am. Compl. ¶¶ 24, 28, 30 & 87). During his employment, Plaintiff's supervisor described his job performance as "exemplary and outstanding." (*Id.* ¶ 83). Plaintiff created new sales routes, hired and trained new salespeople, established and managed Esti's product demonstration team, and directed Esti's promotional efforts. (*Id.* ¶ 21). Plaintiff claims that he "diligently performed all tasks with professionalism and an outstanding work ethic" and was not issued any written or verbal warnings regarding his job performance. (*Id.* ¶¶ 43–44).

*Fourth*, Plaintiff alleges facts, which the Court accepts as true, that raise a reasonable expectation that discovery will reveal that age was the reason for his termination. Esti allegedly denied Plaintiff health coverage, while younger employees received health coverage. (*Id.* ¶¶ 64–

65). He claims that he faced a barrage of ageist comments from Ifantis and other Esti employees, extending at least from February 2018 to shortly before his termination in August 2019. (*Id.* ¶¶ 33–39). Finally, Plaintiff alleges that Esti misrepresented to the EEOC facts concerning his job performance, which plausibly suggests that Esti sought to mask the real reason for Plaintiff's termination: his age. (*Id.* ¶¶ 79–90 & 92–95). These facts are sufficient to "raise a reasonable expectation that discovery will reveal evidence of" that plaintiff was fired due to his age. *Martinez*, 986 F.3d at 266.

Defendants argue that it is implausible that Plaintiff was fired due to his age—because he was hired only two years prior to his termination, when he was already 66 years old. (Mov. Br. at 7). Although this fact may make it appear less likely that age was the reason for Plaintiff's termination, it does not make Plaintiff's age discrimination claim altogether implausible. For one, the Court cannot assume that the person who hired Plaintiff was Ifantis, the person responsible for many of the demeaning remarks and for terminating Plaintiff. For another, even if Ifantis was responsible for hiring Plaintiff, the Amended Complaint does not suggest that Ifantis was aware of Plaintiff's age at the time of hiring. Further, even if Ifantis directly hired Plaintiff with knowledge of his age, the Court cannot assume that Ifantis did not later have a change of heart concerning the significance of Plaintiff's age. At bottom, when considering a motion to dismiss, the Court is not permitted to draw inferences adverse to the non-moving party. In fact, the Court must draw inferences in *favor* of the non-moving party. The Court thus agrees with Plaintiff that, "[a]fter discovery, Defendants could potentially make this argument, but it is not appropriate at this stage." (D.E. No. 21 ("Opp. Br.") at 7–8).

Further, Defendants argue that Plaintiff fails to allege sufficient facts suggesting that age was the "but for" cause of his termination. (Mov. Br. at 9–10). Although "but-for" causation is

7

ultimately required "[t]o succeed on an ADEA claim," *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)), it is not necessary for Plaintiff to provide specific support for every element of the *prima facie* case at the pleading stage, *see Connelly*, 809 F.3d at 789. Instead, to survive a motion to dismiss, Plaintiff need only allege enough facts "that might give rise to an inference that [plaintiff] was terminated because of [his or her] age." *Dodson*, 773 F. App'x at 81. Plaintiff can successfully state a claim under the ADEA by alleging facts that, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Dodson v. Coatesville Hosp. Corp.*, No. 16-5857, 2017 WL 2798560, at *2 (E.D. Pa. June 28, 2017) (quoting *Willis*, 808 F.3d at 644), *aff'd*, 773 F. App'x 78.

Defendants also assert that Plaintiff's claim is based on stray remarks that are insufficient direct evidence to support a claim of age discrimination under the ADEA. (Mov. Br. at 10–17). It is true that the Third Circuit has consistently declined to accept individual stray remarks as direct evidence of discrimination. *See Dodson*, 773 F. App'x at 80 (finding a "single stray remark" not directed at the plaintiff to be insufficient to "suggest discriminatory animus"); *Hyland v. Am. Int'l Grp.*, 360 F. App'x 365, 367–68 (3d Cir. 2010) (stating that a single remark recognizing the plaintiff's age but unrelated to the plaintiff's termination is not sufficient direct evidence to support an inference of age discrimination); *Brewer v. Quaker State Oil Refin. Corp.*, 72 F.3d 326, 333 (3d Cir. 1995) (finding that a comment by the CEO of employing company that the mid-40s age group "is our future" "should not be given significant or commanding weight"). But Plaintiff does not allege one or two stray remarks. Instead, he alleges a barrage of ageist and demeaning comments. Plaintiff claims that Ifantis told him and other employees that Plaintiff "was an old man and was too old"; "was the oldest person" at Esti; "was older than his father"; and "was in good shape for

an old guy." (Am. Compl. ¶¶ 34–36). The Third Circuit has recognized that a series of such remarks is relevant "evidence of the atmosphere in which [an] employment decision was carried out." *Walden v. Georgia-Pac. Corp.*, 126 F.3d 506, 521 (3d Cir. 1997); s*ee also Woodson v. Scott Paper Co.*, 109 F.3d 913, 922 (3d Cir. 1997) (stating that one remark, even if it was a "mere stray remark," "can constitute evidence of the atmosphere" in which employment decisions were carried out); *Antol v. Perry*, 82 F.3d 1291, 1302 (3d Cir. 1996) (finding that a slur uttered by a supervisor "involved in the [employment] selection process . . . supports an inference of discrimination"). While there might be innocent explanations for the series of remarks, the Court agrees with Plaintiff that it must accept his factual allegations as true and draw all reasonable inferences in his favor. (Opp. Br. at 6). Accordingly, Plaintiff's allegations of numerous ageist remarks by Ifantis "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678).[1]

For the above reasons, Plaintiff has alleged sufficient facts to state a claim of age discrimination under the ADEA.

**B.   Retaliation**

Under the ADEA, it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA]." 29 U.S.C. § 623(d). A *prima facie* case of retaliation under the ADEA has three elements: "(1) [the plaintiff] engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between his participation in

---

[1] Defendants also argue that Plaintiff does not allege that he made a formal complaint to "the appropriate Human Resources personnel," and that Esti's failure to take corrective action, therefore, is not suggestive of discrimination. (Mov. Br. at 4). However, the Court need not address this particular argument because Plaintiff sufficiently states a claim for age discrimination regardless of how the Court should understand the distinction between a formal and an informal complaint.

the protected activity and the adverse employment action." *Silver v. Am. Inst. of Certified Pub. Accts.*, 212 F. App'x 82, 85–86 (3d Cir. 2006).

Plaintiff's factual allegations of retaliation consist of two paragraphs of his Amended Complaint:

> 40. KAPROWSKI complained directly to IFANTIS, who is ESTI's President, about the discriminatory comments repeatedly and throughout his employment when the discriminatory comments were made, including shortly before his termination, but ESTI took no corrective action despite his pleas for help.
>
> 41. On the contrary, on or about August 9, 2019, just days after the last discriminatory comment regarding KAPROWSKI's age, Defendants abruptly fired KAPROWSKI.

(Am. Compl. ¶¶ 40–41).[2]

Defendants argue that Plaintiff's allegations fail to state a claim of retaliation under the ADEA. (Mov. Br. at 18–19). The Court agrees.

*First*, in considering what constitutes protected activity, courts look to "the message being conveyed rather than the means of conveyance." *Curay-Cramer v. Ursuline Academy of Wilmington*, 450 F.3d 130, 135 (3d Cir. 2006) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)). The message conveyed must make the plaintiff's opposition to discriminatory treatment clear by stating, either implicitly or explicitly, "that a protected characteristic was the basis for the adverse employment action." *Id.*

Plaintiff does not satisfy that standard. According to Plaintiff's minimal allegations in support of this claim, he "complained . . . about the discriminatory comments." (Am. Compl. ¶ 40). Such a vague statement fails to sufficiently allege that Plaintiff engaged in protected activity. Moreover, while Plaintiff claims he complained about the demeaning remarks, he appears not to

---

[2] The other paragraphs in which Plaintiff alleges retaliation are comprised of conclusory legal statements that the Court cannot accept as true. (*See id.* ¶¶ 45–48).

10

claim that the demeaning remarks, alone, constituted a practice made unlawful under the ADEA. *Cf. Clark County v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam) (rejecting Title VII retaliation claim where the complained-of conduct clearly did not reasonably violate Title VII's standards for unlawful discrimination).[3]

*Second*, to plead the causation element, plaintiff may allege "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; . . . (2) a pattern of antagonism coupled with timing; [or (3)] that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Griesbaum v. Aventis Pharms.*, 259 F. App'x 459, 466–67 (3d Cir. 2007) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000))).

Plaintiff has not alleged an unusually suggestive temporal proximity between his allegedly protected conduct and his termination. Nor does Plaintiff appear to allege a pattern of antagonism related to his alleged complaints or any other facts from which the trier of fact could infer causation. Instead, Plaintiff alleges a pattern of antagonism related to his status as an older employee at Esti. He does not allege facts suggesting that the antagonism was related to his alleged complaints about the discriminatory treatment. Indeed, contrary to Plaintiff's suggestion, the Amended Complaint does not outline a "gradual deterioration" in the employment relationship after Plaintiff engaged in a protected activity. (Opp. Br. at 23 (quoting *Connelly*, 809 F.3d at 792–93)). Instead, the Amended Complaint appears to claim that the employment relationship was always poor, but consistently so before and after his alleged complaints.

Accordingly, count two of the Amended Complaint is dismissed for failure to state a claim.

---

[3] The Court disagrees with Plaintiff that Defendants concede he engaged in protected activity. (Opp. Br. at 22). Defendants identify his complaints as "vague" and rhetorically refer to them as "some protected action." (Mov. Br. at 18).

11

The dismissal of count two is *without prejudice*.[4]

IV.    CONCLUSION

For the above stated reasons, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.  An appropriate Order will be entered.

Dated: June 24, 2022

Hon. Esther Salas, U.S.D.J.

---

[4]    The Court also dismisses Plaintiff's retaliation claims brought under the NJLAD—specifically, in counts five and six of the Amended Complaint.  Plaintiff's claims under the NJLAD are assessed under the same framework as that under the ADEA.  *See Dvoskin v. Bio-Reference Lab'ys, Inc.*, No. 18-10667, 2021 WL 2134938, at *3 (D.N.J. May 26, 2021).  Indeed, "New Jersey courts typically look to federal anti-discrimination law in construing [the] NJLAD." *Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001).  Thus, "[a]ny claim under the NJLAD . . . fail[s] for the same reasons that the . . . ADEA . . . claim[] fail[s]." *Buj v. Psychiatry Residency Training*, 860 F. App'x 241, 245 (3d Cir. 2021).  Counts five and six are thus dismissed *without prejudice*.

Plaintiff's other state law claims may proceed.  Those claims are for discrimination under the NJLAD (counts three and four); for breach of contract and unjust enrichment (counts seven and nine); and for failure to pay wages under the NJWPL (count eight).  Defendants do not move to dismiss those claims for any reason other than for a lack of supplemental jurisdiction in the event Plaintiff's federal claims were dismissed. (Mov. Br. at 1 & 20).  However, Plaintiff's claim for age discrimination under the ADEA may proceed.  Accordingly, the Court has supplemental jurisdiction over the remaining state law claims.